JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
HILLARY A. HAMILTON (SBN 218233)
hillary.hamilton@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Ste. 200N
Los Angeles, California 90067
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600

OF COUNSEL
MICHAEL W. McTIGUE JR.
michael.mctigue@skadden.com
MEREDITH C. SLAWE
meredith.slawe@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Telephone:   (212) 735-3000
Facsimile:   (212) 735-2000

*Attorneys for Defendant*
TODD SNYDER, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SANDOVAL, an individual, <br><br> Plaintiff, <br><br> v. <br><br> TODD SNYDER, INC., and DOES 1 through 10, <br><br> Defendants. | CASE NO.: <br><br> **NOTICE OF REMOVAL** <br><br> [Removal from the Superior Court of California, Los Angeles County, Case No. 26STCV00514] |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendant Todd Snyder, Inc., through undersigned counsel, hereby effects the removal of this action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California. Removal is proper based upon diversity jurisdiction pursuant to 28 U.S.C. § 1332. As grounds for removal of this action pursuant to 28 U.S.C. § 1446(a), Defendant states as follows:

<u>**PROCEDURAL HISTORY AND BACKGROUND**</u>

1.      On January 8, 2026, Plaintiff Michael Sandoval filed a Complaint in the Superior Court for the State of California for the County of Los Angeles, Case No. 26STCV00514 (the "Complaint" or "Compl.").

2.      Plaintiff served the Complaint and Summons on Defendant on January 27, 2026. Pursuant to 28 U.S.C. § 1446(a), copies of the Complaint, Summons, Civil Case Cover Sheet, Alternative Dispute Resolution Package, Notice of Case Assignment, Notice of Case Management Conference, and Notice of Case Reassignment are attached as Exhibits 1-7. The documents that comprise Exhibits 1-7 constitute all process, pleadings, and orders served upon Defendant. *See* 28 U.S.C. § 1446(a).

3.      The action arises from Plaintiff's alleged visits to Defendant's website, www.toddsnyder.com (the "Website"). (Compl. ¶ 1.) Plaintiff alleges that Defendant installed "pen registers and/or trap and trace devices on Plaintiff's internet browser without a court order and without Plaintiff's consent and wrongfully obtained Plaintiff's data for financial gain" via the use of at least five "pixel trackers" embedded on the Website that transmitted user information to third parties without the users' consent. (*Id.* ¶¶ 1, 5–14.) In addition, Plaintiff alleges that Defendant did not provide "web accessibility programming that would make the Website fully accessible to Plaintiff and others who use screen reading software" due to visual impairment. (*Id.*

¶¶ 16–21.)

4.    Plaintiff asserts four California causes of action: the California Invasion of Privacy Act ("CIPA"), the Unruh Civil Rights Act ("UCRA"), the California Unauthorized Access to Computer Data Act ("CUCA"), and California's Unfair Competition Law ("UCL"). (Compl. ¶¶ 175–99.)

5.    Removal is timely because Defendant filed this Notice of Removal within 30 days after the service of the Summons and Complaint. *See* 28 U.S.C. § 1446(b); Fed. R. Civ. P. 6(a).

6.    Pursuant to 28 U.S.C. § 1446(d), upon filing this Notice of Removal, the undersigned will promptly give written notice of such filing to Plaintiff through his counsel of record, and file a true and correct copy of this Notice of Removal and all documents attached hereto with the Clerk of the Los Angeles County Superior Court.

7.    The removal of this action terminates all proceedings in the Superior Court. *See* 28 U.S.C. § 1446(d).

8.    Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of Defendant's right to assert any defense, argument or objection. Defendant reserves the right to assert all applicable claims and defenses in response to the Complaint.

## GROUNDS FOR REMOVAL

9.    The Court has original jurisdiction, based on diversity grounds, in this case under 28 U.S.C. § 1332(a), and thus removal is appropriate under 28 U.S.C. §§ 1441 and 1446.

10.    28 U.S.C. § 1332(a)(1) provides, in relevant part: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

11.    A removing party need only provide a "short and plain statement of the grounds for removal"; no evidence is required to be submitted with the removal

petition. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 83-84 (2014) (citation modified); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924–25 (9th Cir. 2019).

12. As set forth below, Plaintiff's allegations establish that the state court action meets 28 U.S.C. § 1332(a)'s diversity of citizenship and amount in controversy requirements.

**A.    Diversity of Citizenship Exists.**

13. Diversity of citizenship exists in this case because Plaintiff and Defendant are citizens of different states.

14. Plaintiff alleges that he is a California resident. (Compl. ¶ 25.) Plaintiff acknowledges that Defendant is an Iowa corporation with its principal place of business in New York. (Compl. ¶ 26); 28 U.S.C. § 1332 (c)(1) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business"). No other defendants are named in this action.

15. Because Defendant is a citizen of Iowa and New York, and Plaintiff is a citizen of California, complete diversity exists pursuant to 28 U.S.C. § 1332(a)(1).

**B.    The Amount in Controversy Exceeds $75,000.**

16. This case satisfies the amount in controversy requirement in 28 U.S.C. § 1332(a). Removal is proper "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. §§ 1332(a), 1441(b).

17. In measuring the amount in controversy for diversity jurisdiction purposes, the court considers "whether it is facially apparent from the complaint that the jurisdictional amount is in controversy." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (citation modified). "The amount in controversy is not a prospective assessment of a defendant's liability," but instead is "the amount at stake in the underlying litigation." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (citation modified). That is, "the amount in controversy reflects

the *maximum* recovery the plaintiff could reasonably recover." *Arias*, 936 F.3d at 927. "The amount in controversy may include damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes." *Chavez*, 888 F.3d at 416 (citation modified).

18.    "Under the Ninth Circuit's 'either viewpoint' rule, 'the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce.'" *Sandoval v. Ace Hardware Corp.*, No. EDCV 25-0765 JGB, 2025 WL 2481057, at *4 (C.D. Cal. Aug. 28, 2025) (quoting *In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001)). In establishing the amount in controversy on removal, a defendant "may rely on reasonable assumptions underlying the defendant's theory of damages exposure," including "provid[ing] its own calculations of estimated statutory damages in excess of" any "self-imposed cap" alleged by the plaintiff, as well as injunctive relief. *Sandoval*, 2025 WL 2481057, at *4 (citation modified).

19.    In *Sandoval*, Judge Bernal found the jurisdictional amount in controversy was met in an action brought by *the same Plaintiff*, Michael Sandoval, alleging nearly identical UCRA claims based on website accessibility. There, Plaintiff sought to limit his "statutory relief to $24,999.00 and the cost of injunctive relief to $50,000.00, amounting to $74,999.00," to avoid removal. *Id*. at *4. Judge Bernal rejected Plaintiff's efforts to cap his statutory damages because "the UCRA imposes a *minimum* recovery of $4,000.00 per violation and Plaintiff cites no authority for his ability to limit recovery below a statutory minimum." *Id*. The court further rejected Plaintiff's efforts to cap the injunctive relief sought because "Plaintiff cannot voluntarily limit the cost of injunctive relief, because [d]efendant would be obligated to fully comply with a court's order for injunctive relief even if the cost exceeds $50,000.00." *Id*. at *5.

20.    Here, Plaintiff similarly and impermissibly attempts to "limit[] the total value of all relief sought by this Complaint to a maximum of $74,999.00" and

"expressly limits the cost of injunctive relief sought to $25,000 or less" (Compl. ¶ 184, Prayer ¶ 12), but, as shown below, the minimum statutory damages Plaintiff seeks under CIPA and UCRA, coupled with the estimated costs of injunctive relief and attorneys' fees, exceed the $75,000 amount in controversy.

21. **Statutory Damages.** The Complaint refers to multiple discrete acts that allegedly constitute separate violations of CIPA and UCRA.

22. <u>CIPA</u>. Plaintiff seeks "statutory *minimum* statutory damages [sic] of not less than $5,000 per violation pursuant to section 637.2(a)(1) of the California Penal Code." (Compl. Prayer ¶ 8 (emphasis added)); *see also* Cal. Penal Code § 637.2. Plaintiff repeatedly alleges that he "has visited the Website on multiple separate occasions using SRS," including "as early as December 9, 2025, December 11, 2025, and until the current date." (Compl. ¶¶ 152, 163, 167.) Plaintiff alleges that on these visits, his information was collected by at least five separate tracking technologies "includ[ing], but [] not limited to, the Google Analytics Tracker, the Criteo Tracker, the Microsoft Bing Ads Tracker, the Klaviyo Tracker and the Meta Tracker." (*Id*. ¶¶ 7, 83–132.) Given that Plaintiff has identified at least two specific visits and alleges "multiple" others, Defendant can reasonably and conservatively assume that Plaintiff accessed Defendant's Website three times, incurring at least 15 alleged CIPA violations by the five trackers, totaling at least $75,000 in minimum statutory damages.

23. <u>UCRA</u>. Plaintiff also seeks "statutory *minimum* statutory damages [sic] of not less than $4,000 per violation pursuant to section 52(a) of the California Civil Code" and "[a]s an additional violation pursuant to section 52(a) of the California Civil Code, *minimum* statutory damages of not less than $4,000.00 for deterrence." (Compl. Prayer ¶¶ 6–7 (emphases added).) Specifically, Plaintiff alleges: "Since as early as December 9, 2025, December 11, 2025, and until the current date, during Plaintiff's separate visits to the Website, Plaintiff encountered multiple access barriers which denied Plaintiff full and equal access . . .." (Compl. ¶ 167.) Plaintiff also alleges that he "has been deterred, on a regular basis, from accessing the Website" and "[t]hese

violations are ongoing," and he thus seeks an award of damages of "not less than $4,000 per violation" for "each and every offense." (*Id.* ¶¶ 168, 181, 185; Prayer ¶ 6.) Thus, Plaintiff "alleges ongoing harm and an unspecified number of visits, with two dates merely listed," and "deterred visits 'on a regular basis,' each of which separately entitles an individual to relief under the UCRA." *Sandoval*, 2025 WL 2481057, at *4. Defendant can reasonably and conservatively assume that Plaintiff visited the Website at least three times, plus an additional three deterrence visits, totaling at least $24,000 in statutory minimum damages under the UCRA.

24.    **Injunctive Relief.** Plaintiff seeks "preliminary and permanent injunctive relief as permitted by the Unruh Civil Rights Act [and] California's Unfair Competition Law" to address the alleged website accessibility issues. (Compl. ¶¶ 171–74; Prayer ¶¶ 4-5.) Plaintiff also "seeks injunctive relief to prevent Defendant from continuing its deceptive and unlawful data tracking practices and to require clear and conspicuous notice and opt-in consent for any behavioral tracking involving third-party tools" to remedy the alleged CIPA violations. (*Id.* ¶ 199.) As noted above, Plaintiff's attempt to "expressly limit[] the cost of injunctive relief sought to $25,000 or less" (Compl. ¶ 184) fails because "Plaintiff cannot voluntarily limit the cost of injunctive relief, because Defendant would be obligated to fully comply with a court's order for injunctive relief even if the cost exceeds" $25,000. *Sandoval*, 2025 WL 2481057, at *5; *see also Martinez v. Johnson & Johnson Consumer Inc.*, 471 F. Supp. 3d 1003, 1008 (C.D. Cal. 2020) (rejecting attempt to limit costs of injunctive relief in complaint to avoid removal because "[i]f Plaintiff prevails in this case, and injunctive relief is granted, the cost will be out of Plaintiff's control").

25.    Here, the potential cost to Defendant to comply with the injunction Plaintiff seeks would exceed the $25,000 cap Plaintiff impermissibly tries to impose. In considering Plaintiff's request for injunctive relief to address UCRA issues in a similar complaint, Judge Bernal concluded the defendant offered a "reasonable assumption" that such website compliance costs could exceed $50,000. *Sandoval*,

2025 WL 2481057, at \*5; *see also Rodriguez v. Foot Locker Corp. Servs., Inc.*, No. CV 20-8536-MWF, 2020 WL 6818448, at \*3–4 (C.D. Cal. Nov. 20, 2020) (denying remand of UCRA action where cost of complying with injunction to address website accessibility issues for visually-impaired individuals would exceed $75,000). Moreover, Plaintiff seeks injunctive relief not just to address the alleged accessibility issues, but also the privacy issues alleged in his CIPA claim. It can thus be reasonably assumed that the costs of injunctive relief, in addition to the statutory minimum damages sought, will exceed the jurisdictional amount in controversy.

26.    **Attorneys' Fees**. Plaintiff seeks "reasonable attorneys' fees and costs" awardable under the UCRA and CUCA. (Compl. ¶¶ 185, 189, 199); *see also* Cal. Civ. Code § 52(a); Cal. Penal Code § 502(e)(2). The Ninth Circuit regularly considers attorneys' fees when calculating the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."); *Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018) ("[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met.").

27.    Attorneys' fees awarded under the UCRA can be substantial. *See, e.g.*, *Engel v. Worthington*, 60 Cal. App. 4th 628, 635–36 (1997) (ordering lower court to consider request for $80,875 in attorneys' fees for recovering $250 in UCRA damages); *Antoninetti v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 710, 714, 725-26 (S.D. Cal. 2014) (awarding $337,752.27 in attorneys' fees and costs pursuant to ADA and UCRA), *aff'd sub nom.*, *Goldkorn v. Chipotle Mexican Grill, Inc.*, 669 F. App'x 920 (9th Cir. 2016).

28.    In *Sandoval*, Judge Bernal observed that while Plaintiff, like here, only requested "reasonable attorneys' fees and costs, which are not quantified or estimated" under the UCRA, that "even at this stage [the requested fees] would almost certainly

exceed" the amount needed to "push the amount in controversy over $75,000." *Sandoval*, 2025 WL 2481057, at *4, *5. Here, the attorneys' fees that could potentially be awarded under the UCRA and CUCA, when added to the amount in controversy, likewise exceed the $75,000 jurisdictional minimum.

29.    In sum, the statutory minimum damages under CIPA and UCRA, injunctive relief costs, and attorneys' fees and costs sought by Plaintiff collectively exceed $75,000, and thus removal is warranted.

## CONCLUSION

For the foregoing reasons, Defendant respectfully removes the above-captioned action from the Superior Court of California for the County of Los Angeles, bearing case number 26STCV00514, to the United States District Court of the Central District of California.

DATED: February 26, 2026

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:    _____/s/Jason D. Russell_____

Jason D. Russell
*Attorneys for Defendant*
TODD SNYDER, INC.